JACKSON v OLIVER

Docket No. 139231. Submitted February 4, 1993, at Detroit. Decided March 8, 1994, at 9:05 A.M.

Margaret Jackson, as personal representative of the estate of James Sims, brought a wrongful death action in the Wayne Circuit Court against Michigan State Police Troopers Michael Oliver, Andre White, and Lewis Lipscomb, alleging that Sims died from injuries sustained in a motorcycle crash as a result of the defendants' negligence in pursuing Sims in their police cruisers at high speed after he attempted to evade arrest. The court, John A. Murphy, J., granted summary disposition for the defendants. The plaintiff appealed.

The Court of Appeals *held:*

A police officer pursuing a fleeing suspect does not owe the suspect a duty to refrain from a high-speed chase that endangers the safety of the suspect.

Affirmed.

AUTOMOBILES — NEGLIGENCE — POLICE CRUISERS — FLEEING SUSPECTS.

A police officer operating a cruiser while in pursuit of a fleeing suspect does not owe the suspect a duty to refrain from a high-speed chase that endangers the safety of the suspect.

*Brunetta Brandy,* for the plaintiff.

*Kallas & Henk, P.C.* (by *Constantine N. Kallas*), for the defendants.

Before: WAHLS, P.J., and MICHAEL J. KELLY and CONNOR, JJ.

PER CURIAM. In this wrongful death action re-

REFERENCES

Am Jur 2d, Sheriffs, Police, and Constables § 157.

Liability arising from accidents involving police vehicles. 83 ALR2d 383.

sulting from a high-speed chase, summary disposition was granted in favor of defendants, who are Michigan state troopers, pursuant to MCR 2.116(C) (8). Plaintiff's decedent, James Sims, was a motorcycle rider pursued by the troopers. This case involves an appellate issue of first impression in this state. Thus far, Michigan has not recognized a cause of action on behalf of a driver injured while fleeing the police.

The briefs and record consist of pleadings and argument and indicate that on June 6, 1987, at approximately 3:15 A.M., Michigan State Police Troopers Michael Oliver and Andre White were patrolling the I-96 freeway. They observed James Sims operating a motorcycle at an excessive rate of speed. Their reports estimated that the motorcycle was traveling at approximately eighty-five miles an hour. Sims got off the freeway at Davison. The troopers activated their overhead lights and attempted to pull Sims over for speeding. Sims sped away, ran a red light, and the officers began pursuit. They immediately notified their supervisor, desk sergeant Douglas Parvienian, of the chase. The motorcycle was pursued by the troopers for about eleven minutes, at speeds up to one hundred miles an hour, through residential and commercial areas. All the while, Oliver and White were in constant radio contact with their desk sergeant. As Oliver and White followed Sims west on Seven Mile Road, a cruiser driven by defendant Lipscomb, became a second pursuit vehicle, and tried to intercept the fleeing motorcycle by traveling east on Seven Mile Road. The motorcycle then crossed the center line into the eastbound traffic lanes, facing Lipscomb's vehicle "head on." Both Sims and Lipscomb apparently attempted to avoid an accident, but the motorcycle "broadsided" the police cruiser driven by Trooper Lipscomb. The

motorcycle erupted into flames, and Sims was killed instantly.

Plaintiff brought this wrongful death action, alleging that defendants' negligence and gross negligence in pursuing and apprehending the fleeing Sims was a proximate cause of Sims' injuries. Subsequently, defendants moved for summary disposition pursuant to MCR 2.116(C)(8). On March 7, 1991, the trial court granted defendants' motion.[1] The trial court, basing its decision upon public policy grounds, held that a fleeing wrongdoer should not be able to recover in a negligence action brought against the officers who were pursuing him:

> This court believes that there are significant policy reasons which would restrain this court from holding a [defendant] or police agency liable for injuries caused by [sic] the fleeing party in a police chase under the facts as presented here.
>
> The plaintiff should not be able to make a pecuniary recovery for damages where such damages are precipitated or at least set in motion by his intentional act and he had the complete power to avoid them.

First, we address plaintiff's argument that the trial court erred in granting summary disposition pursuant to MCR 2.116(C)(8). The issue is whether plaintiff can maintain a cause of action against Troopers Oliver, White, and Lipscomb for the alleged negligent and grossly negligent operation of their police cruisers during the pursuit and apprehension of a fleeing wrongdoer. We conclude such a cause of action cannot be maintained.

---

[1] Although the Michigan State Police and the State of Michigan were granted summary disposition in the order appealed from, appellant's brief challenges only the validity of the order with regard to the individual defendants, Troopers Oliver, White, and Lipscomb.

A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim by the pleadings alone. *Formall, Inc v Community Nat'l Bank of Pontiac,* 166 Mich App 772, 777; 421 NW2d 289 (1988). All factual allegations in support of the claim are accepted as true, as well as any reasonable inferences or conclusions that can be drawn from the facts. *Kauffman v Shefman,* 169 Mich App 829, 833; 426 NW2d 819 (1988). The motion should be granted only where the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery. *Wade v Dep't of Corrections,* 439 Mich 158, 163; 483 NW2d 26 (1992).

After reviewing the pleadings in this matter, we believe plaintiff has failed to state a claim upon which relief can be granted.

To establish a prima facie case of negligence, the plaintiff must prove: (1) that the defendant owed a duty to the plaintiff; (2) that the defendant breached the duty; (3) that the defendant's breach of duty was a proximate cause of the plaintiff's damages; and (4) that the plaintiff suffered damages. *Sierocki v Hieber,* 168 Mich App 429, 433; 425 NW2d 477 (1988). Therefore, in order to assert negligence, a plaintiff must first establish the existence of a duty owed by the defendant to the plaintiff. *Douglas v Elba, Inc,* 184 Mich App 160, 163; 457 NW2d 117 (1990). Duty may be defined as "an obligation, to which the law will give recognition and effect. To conform to a particular standard of conduct toward another." *Sierocki, supra* at 433. Questions of duty are generally for the court to decide. *Moning v Alfono,* 400 Mich 425, 438-439; 254 NW2d 759 (1977).

Plaintiff alleged that defendants' negligence and gross negligence in pursuing and apprehending Sims was the proximate cause of his injuries and

death. Although the issue whether police officers owe a duty to a fleeing motorist has not been previously decided in Michigan, our Supreme Court, in *Fiser v Ann Arbor,* 417 Mich 461; 339 NW2d 413 (1983), determined that an innocent bystander who is injured in a high-speed police chase of a motorist could bring a negligence action against the police officers, and the city that employed them, for negligent operation of police vehicles involved in the high-speed pursuit.

The *Fiser* rule is that police officers owe a duty to innocent bystanders to avoid operating their police vehicles in a negligent manner and that emergency vehicles must be driven with due regard for the safety of others. We do not believe that the *Fiser* decision applies in a case where injuries were suffered by a fleeing wrongdoer.

The trial court's decision to grant summary disposition was based on public policy grounds: that a fleeing wrongdoer should not be able to recover money damages from the officers who were pursuing him. We agree. Out of concern for public safety, police must sometimes allow fleeing suspects to get away. However, it would be absurd to conclude that the police, out of concern for the safety of a fleeing criminal suspect, must cease pursuit of the fleeing suspect or risk possible civil liability.

The state troopers chased plaintiffs' decedent only after seeing him ride his motorcycle well above the posted speed limit. Thus, it was the decedent's speeding that first endangered his life and property. After the chase began, the police did not dictate the degree of speed. The decedent chose how fast he was willing to go to evade arrest. What endangered, and ultimately took, the life of the decedent was his own speeding and reckless conduct. He lost control of his motorcycle because

he was going too fast, not because the police were. A criminal suspect who defies police authority does not thereby trigger some enhanced duty or obligation on the part of the police. The only limitation on the part of the police is the obligation not to use excessive force when apprehending or attempting to apprehend the suspect. Here, the police did not shoot at the decedent or at his vehicle, they did not set a trap designed to make him lose control of his vehicle, and they did not intentionally ram his vehicle. They did not establish the speed of the chase and did not control the route, they simply attempted to prevent the decedent's escape. This is not the use of excessive force, it is the use of minimal force.

We hold that plaintiff's complaint was properly dismissed. Police officers in pursuit of a suspect do not owe the suspect a duty to refrain from chasing the suspect at speeds dangerous to the suspect.

Affirmed.